**BRYAN CAVE LEIGHTON PAISNER LLP**
Keith D. Klein (California Bar No. 184846)
120 Broadway, Suite 300
Santa Monica, California 90401
Telephone:   (310) 576-2100
Facsimile:   (310) 576-2200
keith.klein@bclplaw.com
andrew.chereck@bclplaw.com

David Harford (California Bar No. 270696)
1920 Main Street, Suite 1000
Irvine, California 92614
Telephone:   (949) 223-7000
Facsimile:   (949) 223-7100
david.harford@bclplaw.com

Attorneys for Plaintiff
PROCOLOR COLLISION USA LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROCOLOR COLLISION USA LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>ANATOLIY BURYAKOV, an individual, COLLISION EXPRESS CENTER INC. a California Corporation, PRO COLLISION CENTER INC., a California Corporation, MOSES BURYAKOV, an individual, and DOES 1-10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**(1)    BREACH OF CONTRACT - INJUNCTIVE RELIEF**<br>**(2)    BREACH OF CONTRACT - SPECIFIC PERFORMANCE**<br>**(3)    FEDERAL TRADEMARK INFRINGEMENT**<br>**(4)    FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**<br><br>**JURY TRIAL DEMANDED** |

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

Plaintiff ProColor Collision USA LLC ("ProColor") alleges as follows:

## **NATURE OF THE ACTION**

1.      This action arises from the Defendants' deliberate effort to hijack ProColor Collision's trademarks, trade dress, and franchise system by converting authorized ProColor Collision® centers in Shingle Springs and Sacramento, California into competing shops—"Pro Collision Center"—during the active term of valid Franchise Agreements.

2.      Between September 1, 2021 and April 1, 2023, Defendant Collision Express Center Inc. entered in three franchise agreements ("Franchise Agreements") to operate exclusively as a ProColor franchisee at three locations: 4213 Sunset Lane, Shingle Springs, CA 95682; 5445 Stationers Way Suite B, Sacramento, CA 95842; and 6220 88th Street, Sacramento, CA 95828 (collectively the "Locations"). Collision Express Center also agreed to comply with ProColor's trademark, branding, and in-term non-compete obligations for a term of five years. Collision Express Center stopped operating its ProColor shops in or around November 2025, ceased paying franchise fees, and Defendants then launched a competing business at the same Locations.

3.      The competing business, owned and controlled by Defendant Anatoliy Buryakov's son, Moses, uses a name and branding intentionally designed to mimic ProColor, including identical or nearly identical signage and ProColor's black and white checkered flag and red-white-and-blue trade dress. In some instances, Defendants have continued displaying actual ProColor signage, falsely suggesting that an authorized ProColor Collision® center remains in operation and misleading consumers.

4.      ProColor issued a Notice of Default and Trademark Violations on December 4, 2025, but Defendants ignored it and continue their infringing and competing operations. Their conduct is willful, ongoing, and in direct violation of the Franchise Agreements, Personal Guaranties, and the Lanham Act, causing continuing and irreparable harm to ProColor's brand, goodwill, reputation, and franchise system.

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

1    5.    ProColor therefore seeks temporary, preliminary, and permanent

2  injunctive relief, as well as specific performance, to stop Defendants' infringement,

3  enforce the in-term non-compete, and prevent further misuse of ProColor's

4  PROCOLOR COLLISION® marks.

5                                  **PARTIES**

6    6.    Plaintiff ProColor was launched more than 20 years ago in Canada and

7  has a reputation for quality and consistency in collision repair. It offers independent

8  body shops in the United States an opportunity to join one of the largest and fastest

9  growing automotive aftermarket networks in the world. As part of the Fix Network

10  group—a global leader in automotive collision, glass, and mechanical repair services—

11  ProColor leverages established national and global partnerships with insurers, fleets and

12  suppliers to help drive business to body shops in the United States who sign contracts

13  to act as ProColor franchisees in a protected territory.

14    7.    Defendant Collision Express Center Inc. ("CEC") is a California

15  corporation with a principal place of business located in Sacramento, California. CEC is

16  ProColor's franchisee for ProColor Collision centers located at 4213 Sunset Lane, Suite

17  106, Shingle Springs, CA 95682 ("Shingle Springs Location"), 5445 Stationers Way

18  Suite B, Sacramento, CA 95842 ("Sacramento North East Location"), and 6220 88th

19  Street, Sacramento, CA 95828 ("Sacramento South East Location").

20    8.    Defendant Anatoliy ("Tony") Buryakov is an individual resident of

21  California, the principal of CEC, and the guarantor of all of CEC's performance and

22  payment obligations under the Franchise Agreements.

23    9.    Defendant Pro Collision Center Inc. ("PCC") is, on information and

24  belief, a California corporation with its principal place of business in Shingle Springs,

25  California. It operates an automotive repair company that competes with ProColor at

26  the Locations at which Tony Buryakov is contractually obligated to operate ProColor

27  Collision franchises for the remainder of the term of the Franchise Agreements.

28

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

1  ProColor is informed and believes that PCC was started by Defendant Moses Buryakov

2  with substantial support, encouragement, and assistance from Tony Buryakov.

3      10.    Defendant Moses Buryakov is an individual who—according to California

4  Secretary of State filings—owns and controls Defendant PCC. Moses Buryakov is also

5  the son of Tony Buryakov.

6      11.    Does 1 through 10, inclusive, whether individual, corporate or otherwise,

7  are sued by such fictitious names because Plaintiffs are unaware of the true names,

8  capacities or identities of such fictitiously designated defendants.  After Plaintiff

9  discovers the true names, capacities or identities of these fictitiously designated

10  defendants, the complaint will be amended to name such defendants.

11      12.    Plaintiff is informed and believes and thereon alleges that at all times

12  herein mentioned, each of the defendants, including the Doe defendants, was and is the

13  agent, servant, employee, representative and/or alter ego of the remaining defendants

14  and, in doing the things hereinafter alleged, was acting within the scope of his, her or

15  its authority as such agent, servant, employee, representative and/or alter ego, with the

16  knowledge, consent, permission and ratification of all remaining defendants.

17                          **JURISDICTION**

18      13.    This Court has original jurisdiction over this dispute under 15 U.S.C.

19  § 1121, and 28 U.S.C. §§ 1331, 1332, 1338, and 1367, in that the federal claims in this

20  case arise under the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq*, and

21  Plaintiff's state law claims involve common facts and legal issues and form part of the

22  same case and controversy.

23      14.    This Court also has jurisdiction over this dispute under 28 U.S.C. § 1332

24  in that there is a diversity of citizenship between the parties and the amount in

25  controversy exceeds $75,000. Plaintiff ProColor is a limited liability company with one

26  member, MondoFix USA LLC. MondoFix USA LLC has one member: Mondofix Inc.,

27  which is a Canadian corporation with a principal place of business at 101-99 Émilien-

28

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

1  Marcoux Street, Blainville, Quebec J7C 0B4, Canada. The Defendants are all citizens of

2  the State of California.

3      15.      Defendants are subject to personal jurisdiction in this District because

4  they reside in and conduct substantial ongoing business activities in this District,

5  including regularly doing or soliciting business, engaging in other persistent courses of

6  conduct, and/or deriving substantial revenue from goods and services provided to

7  persons or entities in California and this judicial district.

8      16.      Venue is proper in this under to 28 U.S.C. § 1391(b) because (i)

9  Defendants all reside, do business, may be found, and are subject to personal

10  jurisdiction in this District; and (ii) a substantial portion of the events giving rise to this

11  action occurred in this District.

12                    **FACTUAL BACKGROUND**

13  **A.       The Franchise Agreements, Term, and Key Covenants**

14      17.      On September 21, 2021, ProColor and CEC executed two franchise

15  agreements granting CEC the right and obligation to operate ProColor Collision

16  locations at the Sacramento South East Location and the Sacramento North East

17  Location. True and correct copies of each of these franchise agreements are attached to

18  this Complaint as **Exhibits A-B**.

19      18.      On April 1, 2023, ProColor and CEC executed a franchise agreement

20  granting CEC the right and obligation to operate a ProColor Collision facility at the

21  Shingle Springs Location for a five-year term. A true and correct copy of this franchise

22  agreement is attached to this Complaint as **Exhibit C**.

23      19.      In Sections 11.9, 19.4, and 19.5 of the Franchise Agreements CEC

24  promised that for the entire term of each agreement it would use ProColor's

25  Trademarks in the operation and promotion of the centers, conform to brand

26  standards, and obtain approval for non-standard marketing (§§11.9, 19.4–19.5).

27      20.      In Section 22.2 of the Franchise Agreements, CEC stipulated to an in-

28  term covenant not to compete.  Specifically:

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

22.2 Franchisee agrees that during the Term, neither Franchisee nor any of its directors, officers, shareholders or the Operator will, either individually or in partnership or jointly or in conjunction with any individual, partnership or other legal entity, and whether as principal, agent, shareholder, member, consultant or in any capacity whatsoever, carry on or be engaged in or be concerned with or interested in or advise, lend money to, guarantee the debts or obligations of or permit its or their name or any part of it to be used in any business whose activities (whether in whole or in part) consist of: (i) the operation of an automotive collision repair center, except pursuant to a franchise agreement with Franchisor in effect at such time, or (ii) a franchise system, an automotive aftermarket marketing banner or a branded chain whose concept (whether in whole or in part) relates to the car collision industry.

21.     CEC specifically agreed in Section 28.1 that any violation of the in-term non-compete provisions or any violation of ProColor's intellectual property rights entitles ProColor "to petition a court of competent jurisdiction for the entry of temporary restraining orders, temporary and permanent injunctions, and orders of specific performance" and that such relief may be granted without a bond or, at maximum,  a bond of no more than $5,000.

22.     Tony Buryakov also executed a personal guaranty appended to each of the Franchise Agreements ("Personal Guaranty") guaranteeing that he would be jointly and severally liable with CEC for "the payment of all fees required to be paid to the Franchisor or its Affiliates by the Franchisee identified in the Franchise Agreement . . . and the performance by the Franchisee of all of the provisions of such agreements."

**B.          ProColor's Federal Trademark Rights**

23.     ProColor (through its licensor Mondofix Inc.) owns valid and subsisting federal trademark registrations for PROCOLOR COLLISION, including Reg. No. 6,548,513 and Reg. No. 6,688,833, covering franchising, automotive collision repair services, and related goods/services. True and correct images of these registered trademarks are shown on the following page:



Registration No. 6,548,513                    Registration No. 6,688,833

24.    As part of its trade dress, ProColor uses a red, white, and blue color scheme with these marks. For example, the banner at the top of the ProColor website uses a red, white and blue color scheme; and ProColor's branding scheme for its franchisees uses a similar red, white, and blue color scheme.

25.    ProColor, including through its authorized licensees and franchisees, has continuously used its PROCOLOR COLLISION® marks, as noted above, in U.S. commerce, nationwide, and elsewhere, on and in connection with its automotive and collision repair and maintenance services for over six years.

26.    ProColor including through its authorized licensees and franchisees, has expended over many years, and continues to expend, a substantial amount of resources, money, time, and effort promoting, marketing, advertising, and building consumer recognition and goodwill in its valuable PROCOLOR COLLISION® marks.  There can be no legitimate dispute that the marks are extremely valuable and have acquired substantial secondary meaning in the marketplace, nor that ProColor has exclusive registered and common law rights in, to, and under its PROCOLOR COLLISION® Marks throughout the United States and elsewhere.

27.    ProColor, including through its authorized licensees and franchisees, markets, advertises, and promotes its services under and in connection with its PROCOLOR COLLISION® marks through on-site advertising and other channels, including digital and social media, trade and other publications, national print media,

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

catalogs, television programming, e-commerce, and other advertising and marketing media.

28.    ProColor, including through its authorized licensees and franchisees, maintains active social media accounts, where it posts marketing and advertising materials promoting its marks. For example, ProColor maintains a Facebook page (https://www.facebook.com/ProColorCollisionUSA/) and an Instagram page (https://www.instagram.com/procolorcollisionusa/) among other social media pages.

29.    As a result of ProColor's substantial efforts, including through the efforts of its authorized licensees and franchisees, the public has come to recognize and rely on the PROCOLOR COLLISION® marks to identify the source of origin of ProColor's high quality automotive and collision repair and maintenance services, and, further, to distinguish such high quality services from the goods and services offered by its competitors and others.

30.    The PROCOLOR COLLISION® marks are extremely valuable and have developed a substantial amount of goodwill.

**C.    CEC Ceases Operations and Sets up Pro Collision Center**

31.    From September 2021 to November 2025, CEC operated the Locations using the PROCOLOR COLLISION® marks.

32.    In or around November 2025, CEC began converting its locations into competing automative repair shops. First, it ceased operating the Shingle Springs Locations as a ProColor franchise and stopped paying franchise fees. An entity called Pro Collision Center, owned and controlled by Tony Buryakov's son, Moses Buryakov, began operating a new automotive repair business at the Shingle Springs Location using a name and branding scheme confusingly similar to ProColor's branding and PROCOLOR COLLISION® marks, using similar colors but removing the word COLOR from PROCOLOR COLLISION. A true and correct image of the branding used by the "Pro Collision Center" operating at the Shingle Springs Location is pictured on the next page:

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614



15    33.    At the same time, the competing operation at Shingle Springs continued

16  to use signage containing the PROCOLOR COLLISION® marks, falsely advertising

17  the operation of a ProColor store at the Location. A true and correct image of an

18  example of signage using the PROCOLOR COLLISION® marks at the Location is

19  pictured below:

20
21
22
23
24
25
26
27
28



8

**COMPLAINT**

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

34.     In or around January 2026, after converting the Shingle Springs Location, PCC, Tony Buryakov, and Moses Buryakov, began converting the Sacramento North East and Sacramento South East Locations into competing automative repair shops owned by PCC, also using the confusingly similar "Pro Collision Center" signage, branding, and marks.  For example, both locations in Sacramento are now advertised on Google Maps with pictures of the interiors of the stores using the confusingly similar red, white, and blue branding, as shown in the images below:





35.     Defendants also recently rebranded the exteriors of these locations with the "Pro Collision Center" signage in red, white, and blue, as demonstrated in the below image taken on February 13, 2026 showing Defendants in the midst of installing the new signage at the Sacramento South East Location:



36.     ProColor is the senior user of the PROCOLOR COLLISION® marks, using them to promote its business and franchisees since at least 2020. Defendant CEC and Tony Buryakov had previously signed up as ProColor franchisees and acknowledged ProColor's rights in and to the PROCOLOR COLLISION® marks. Defendants then adopted and used the infringing branding and name in or about November 2025 in the operation of the competing businesses at the Locations.

37.     On information and belief, Defendants Moses and Tony Buryakov founded PCC on or about October 1, 2025. California Secretary of State records show that PCC filed a statement of information registering the business with a principal address at the Location and listing Moses Buryakov, Tony Buryakov's son, as its owner and sole officer and board member. As a result, ProColor is informed and believes that at all times both father and son authorized, supervised, directed, and personally engaged in PCC's conduct in: (a) adopting and using the  PROCOLOR COLLISION®

marks and confusingly similar marks at the Locations in connection with the offer, sale, and provision of automotive and collision repair and maintenance services; (b) selection of a business location at the same places previously used by Tony Buryakov as the sites for the operation of authorized ProColor franchise locations; and (c) use of the PROCOLOR COLLISION® marks and confusingly similar marks to cause confusion in the marketplace, compete unfairly with ProColor, and divert sales from authorized ProColor businesses to Defendants.

38.    Defendants' automotive and collision repair and maintenance services are in direct competition with and identical or highly related to Plaintiff's automotive and collision repair and maintenance services. For example, Pro Collision Center's website advertises the same services that are offered by ProColor such as accident repair, bumper repair, and paintless dent repair.

39.    Defendants are offering their competing automotive and collision repair and maintenance services through on-site advertising in the same manner as Plaintiff and its authorized franchisees offer their automotive and collision repair and maintenance services, including through a website and facebook page that uses the confusingly similar name "Pro Collision Center" and red, white, and blue color scheme used at the Locations.

40.    Defendants are offering their automotive and collision repair and maintenance services to the same customers that Plaintiff and its authorized franchisees offer their automotive and collision repair and maintenance services—i.e., persons and businesses in need of automotive and collision repair and maintenance services.

41.    Defendants' directly competing services are being offered through similar channels of trade, to similar classes of consumers, and under circumstances that are likely to cause confusion between ProColor and its PROCOLOR COLLISION® marks, services, and business, and Defendants' use of the PROCOLOR COLLISION® marks and confusingly similar marks for the same services and

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

1  business. For example, the first two results of a Google Search for "ProColor

2  Sacramento" returns the PCC locations in Sacramento.

3       42.     The name Pro Collision Center is substantially similar to Plaintiff's

4  PROCOLOR COLLISION® marks in sight, sound, and commercial impression.

5       43.     For instance, the Pro Collision Center name is confusingly similar to

6  Plaintiff's PROCOLOR COLLISION mark (Reg. No. 6,688,833) and the main

7  difference is Defendants' deletion of the word "COLOR."

8       44.     Similarly, the checkered flag decorative scheme used in connection with

9  the name Pro Collision Center is confusingly similar to the PROCOLLISION

10  CENTER mark (Reg. No. 6,548,513).

11       45.     Additionally, PCC is using signage pointing to the Shingle Springs

12  Location that is identical to the PROCOLOR COLLISION mark, Reg. No. 6.688.833.

13       46.     On information and belief, Defendants intentionally chose to use exact or

14  nearly exact copies of Plaintiff's registered PROCOLOR COLLISION® marks to

15  provide their competing services, such that these are spurious and counterfeit marks

16  under the Lanham Act, 15 U.S.C. §§ 1117(b); 1127.

17       47.     Defendants' use of exact or nearly exact copies of Plaintiff's registered

18  PROCOLOR COLLISION® marks to provide their competing automotive and

19  collision repair and maintenance services is likely to confuse or mislead customers

20  looking for ProColor locations.

21       48.     Defendants' use of exact or nearly exact copies of Plaintiff's registered

22  PROCOLOR COLLISION® marks to provide their competing automotive and

23  collision repair and maintenance services is likely to continue confusing and misleading

24  consumers into (i) believing that the services offered by Defendants are approved,

25  provided, endorsed, or sponsored by ProColor; (ii) believing that the services offered

26  by ProColor are associated, connected, or otherwise affiliated with Defendants, which

27  they are not; and/or (iii) being diverted to Defendants' shop, website, and services and

28  away from ProColor's authentic shops, website, and/or services.

49.    Defendants' use of exact or nearly exact copies of Plaintiff's registered PROCOLOR COLLISION® marks to provide their competing automotive and collision repair and maintenance services will continue to cause the trade, customers, potential customers, consumers and/or the relevant purchasing public to be confused into believing that: (i) ProColor is the source of origin of the services being marketed, advertised, promoted, offered for sale, sold, and/or provided by Defendants under and in connection with Pro Collision Center; (ii) ProColor approves of Defendants and/or Defendants' actual or intended advertising, marketing, promotion, offer for sale, sale, and/or provision of Defendants' services; and/or (iii) Plaintiff is sponsoring, endorsing, administering, supervising, or is otherwise connected with Defendants and/or Defendants' actual or intended advertising, marketing, promotion, offer for sale, sale, and/or provision of Defendants' services.

50.    Defendants' use of exact or nearly exact copies of Plaintiff's registered PROCOLOR COLLISION® marks to provide their competing automotive and collision repair and maintenance services has caused actual damages to ProColor resulting from the loss of customers believing that they are visiting ProColor locations instead of competitors and the dilution of its registered trademarks.

51.    In addition, Defendants are making use of Plaintiff's PROCOLOR COLLISION® marks and/or confusingly similar variations thereof on and in connection with Defendants' services which, on information and belief, have disparate, alternative, and inferior qualities to Plaintiff's authentic PROCOLOR COLLISION® automotive and collision repair and maintenance services.

52.    On December 4, 2025, ProColor sent CEC a Notice of Default and Trademark Violations, identifying breaches of §§11.9, 19.4, 19.5, and 22.2 and demanding a cure within 30 days. A true and correct copy of the notice is attached to this Complaint as **Exhibit D**. CEC and Buryakov failed to respond to the notice and did not cure the violations or comply with the Franchise Agreements.

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

53. On or about December 24, 2025 after receiving no response from Defendants, Plaintiff sent Defendants another letter, requesting the courtesy of a response. A true and correct copy of this letter is attached to this Complaint as **Exhibit E**.

54. On information and belief, Defendants will continue to use, cause confusion, and wrongfully benefit and gain from their infringing use of the PROCOLOR COLLISION® marks and/or confusingly similar variations thereof unless enjoined by this Court.

55. By virtue of the Franchise Agreement and ProColor's letters, Defendants have had actual knowledge of Plaintiff's rights in, to, and under the PROCOLOR COLLISION® marks since at least Plaintiff's first notice to Defendants on December 4, 2025. Nevertheless, Defendants elected to intentionally and willfully continue providing their services under the infringing name and confusingly similar branding and trade dress, wrongfully causing confusion and profiting from Plaintiff's goodwill in and to its highly valuable and well-known mark and name, making this an exceptional case.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Breach of Contract-Injunctive Relief)

(Against Collision Express Center Inc. and Tony Buryakov)

56. ProColor realleges and incorporates by reference the preceding paragraphs.

57. ProColor and CEC entered into the Franchise Agreements, the terms and conditions of which are attached as Exhibits A-C and are incorporated herein by reference.

58. ProColor and Tony Buryakov entered into the Personal Guaranties, the terms and conditions of which are included as an attachment to Exhibits A-C and are incorporated herein by reference.

59. Both the Franchise Agreements and the Personal Guaranties are enforceable written agreements entered into by the parties.

60. ProColor fully performed under the Franchise Agreements and Personal Guaranties.

61. CEC breached the Franchise Agreements by:

a. Failing to operate a ProColor store from September 1, 2021 to September 2, 2026 in full compliance with its obligations under Sections 11.9, 19.4, and 19.5 of the Franchise Agreements to conform its operations and promotion of the Sacramento North East Location to ProColor's brand standards.

b. Failing to operate a ProColor store from September 1, 2021 to September 2, 2026 in full compliance with its obligations under Sections 11.9, 19.4, and 19.5 of the Franchise Agreements to conform its operations and promotion of the Sacramento South East Location to ProColor's brand standards.

c. Failing to operate a ProColor store from April 1, 2023 to April 1, 2028 in full compliance with its obligations under Sections 11.9, 19.4, and 19.5 of the Franchise Agreements to conform its operations and promotion of the Shingle Springs Location to ProColor's brand standards.

d. CEC also breached the Franchise Agreements by owning, assisting with, and/or operating a competing business at the Locations during the term of the Franchise Agreements, in violation of Section 22.2.

62. Tony Buryakov breached the Guaranties by failing to ensure that CEC performed as promised in the Franchise Agreements.

63. As a direct and proximate result of these breaches, CEC and Tony Buryakov have damaged and are continuing to damage ProColor because it is not receiving franchise fees to which it is entitled from the operation of a ProColor location for the remainder of the Franchise Agreement term and it is losing customers who would otherwise used ProColor's services.

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

64.    In addition, CEC and Tony Buryakov's breaches have caused and will continue to cause irreparable harm to ProColor's brand and reputation with retail customers and with franchisees, and are likely to continue unabated, thereby causing further damage and irreparable harm to ProColor and its goodwill and business reputation, unless preliminarily and permanently enjoined and restrained by the Court.

65.    ProColor has no adequate remedy at law for the continuing breaches of the Franchise Agreement and Personal Guaranty, and ProColor will suffer irreparable injury in an amount that cannot be ascertained at this time if CEC and Tony Buryakov are allowed to continue to compete improperly in violation of their contractual obligations.

66.    Accordingly, ProColor is entitled to injunctive relief enjoining CEC and Tony Buryakov, and all others acting in concert with them, and their successors and assigns, from improperly competing with ProColor and failing to perform all its obligations as a ProColor franchisee for the full term of the Franchise Agreements.

## SECOND CLAIM FOR RELIEF

## (Breach of Contract-Specific Performance)

(Against Collision Express Center Inc. and Tony Buryakov)

67.    ProColor realleges and incorporates by reference the preceding paragraphs.

68.    ProColor and CEC entered into the Franchise Agreements, the terms and conditions of which are attached as Exhibits A-C and are incorporated herein by reference.

69.    ProColor and Tony Buryakov entered into the Personal Guaranties, the terms and conditions of which are included as an attachment to Exhibits A-C and are incorporated herein by reference.

70.    Both the Franchise Agreements and the Personal Guaranties are enforceable written agreements entered into by the parties.

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

71. ProColor fully performed under the Franchise Agreements and Personal Guaranties.

72. CEC breached the Franchise Agreements by:

    a. Failing to operate a ProColor store from September 1, 2021 to September 2, 2026 in full compliance with its obligations under Sections 11.9, 19.4, and 19.5 of the Franchise Agreements to conform its operations and promotion of the Sacramento North East Location to ProColor's brand standards.

    b. Failing to operate a ProColor store from September 1, 2021 to September 2, 2026 in full compliance with its obligations under Sections 11.9, 19.4, and 19.5 of the Franchise Agreements to conform its operations and promotion of the Sacramento South East Location to ProColor's brand standards.

    c. Failing to operate a ProColor store from April 1, 2023 to April 1, 2028 in full compliance with its obligations under Sections 11.9, 19.4, and 19.5 of the Franchise Agreements to conform its operations and promotion of the Shingle Springs Location to ProColor's brand standards.

    d. CEC also breached the Franchise Agreements by owning, assisting with, and/or operating a competing business at the Locations during the term of the Franchise Agreements, in violation of Section 22.2.

73. Tony Buryakov breached the Guaranties by failing to ensure that CEC performed as promised in the Franchise Agreements.

74. As a direct and proximate result of these breaches, CEC and Tony Buryakov have damaged and are continuing to damage ProColor because it is not receiving franchise fees to which it is entitled from the operation of a ProColor location for the remainder of the Franchise Agreement term and it is losing customers who would otherwise used ProColor's services.

75. As a direct and proximate result of these breaches, CEC and Tony Buryakov's breaches have caused and will continue to damage ProColor and cause irreparable harm to ProColor's brand and reputation with retail customers and with

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

1  franchisees, and are likely to continue unabated, thereby causing further damage and

2  irreparable harm to ProColor and its goodwill and business reputation.

3      76.    ProColor has no adequate remedy at law for the continuing breaches of

4  the Franchise Agreement and Personal Guaranty, and ProColor will suffer irreparable

5  injury in an amount that cannot be ascertained at this time if CEC and Tony Buryakov

6  are allowed to continue to compete improperly in violation of their contractual

7  obligations.

8      77.    Accordingly, ProColor is entitled to an order for specific performance of

9  the terms of the Franchise Agreement and Personal Guaranty compelling CEC and

10  Tony Buryakov to comply with the terms of those agreements.

**THIRD CLAIM FOR RELIEF**

**Trademark Infringement (15 U.S.C. § 1114)**

(Against all Defendants)

14      78.    ProColor realleges and incorporates by reference the preceding

15  paragraphs.

16      79.    ProColor is the owner of all rights, title, and interest in, to, and under its

17  distinctive PROCOLOR COLLISION® marks, as well as all goodwill therein.

18      80.    ProColor began using and acquiring rights in, to, and under, its valuable

19  and well-known PROCOLOR COLLISION® marks long prior to Defendants'

20  adoption and first use of Plaintiff's PROCOLOR COLLISION® marks and/or

21  confusingly similar variations thereof, including, without limitation, the Pro Collision

22  Center name and the confusingly similar or identical branding and marks.

23      81.    ProColor is the senior user of its PROCOLOR COLLISION® marks for

24  automotive and collision repair and maintenance services throughout the United States.

25      82.    Defendants' unlicensed, unconsented to, and otherwise unauthorized use

26  of PROCOLOR COLLISION® marks and/or confusingly similar variations thereof,

27  on or in connection with its actual or intended advertising, marketing, promotion,

28  offer, sale, and/or provision of its identical and highly related automotive and collision

repair and maintenance services, has caused, will continue to cause, and/or is likely to cause the trade, consumers, and the relevant purchasing public to be confused and mistaken as to the source of origin of the services being offered, sold, and/or provided by Defendants and, further, to deceive the trade, customers, and the relevant purchasing public as to whether Plaintiff is affiliated with, connected with, associated with, and/or a sponsor of Defendants' use of Plaintiff's distinctive, well-known, and valuable PROCOLOR COLLISION® marks on or in connection with such identical and highly related services.

83.    Defendants have engaged in the activities described above with, on information and belief, the intent to confuse and deceive the public into believing that Defendants and their automotive and collision repair and maintenance services originate from, are affiliated with, or are sanctioned, endorsed, approved, or authorized by Plaintiff.

84.    Defendants acted willfully and intentionally in using the PROCOLOR COLLISION® marks and/or confusingly similar variations thereof to cause confusion and deception as to whether Defendants and/or their automotive and collision repair and maintenance services, are affiliated with, or are sanctioned, endorsed, approved, or authorized by Plaintiff.  The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

85.    In addition, Pro Collision Center is a spurious designation which is identical to and/or substantially indistinguishable from Plaintiff's registered PROCOLOR COLLISION® marks, rendering such designation a counterfeit mark being, on information and belief, knowingly and intentionally used by Defendants in violation of 15 U.S.C. §§ 1117(b) and 1127.

86.    CEC, Tony Buryakov, and Moses Buryakov authorized, supervised, directed, and personally and knowingly engaged in PCC's conduct as described above. Accordingly, Tony and Moses Buryakov are jointly and severally liable for such conduct, by virtue of which, Defendants have committed and are continuing to commit

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

19
**COMPLAINT**

acts of federal trademark infringement in violation of, *inter alia*, Section 32 of the Lanham Act, 15 U.S.C. § 1114.

87.   CEC, Tony Buryakov, and Moses Buryakov are also vicariously liable for PCC's infringement. They have the right and ability to supervise and control PCC's acts and have a direct financial interest in PCC's infringement, including profits received from sales of PCC's infringing services.

88.   Defendants' aforesaid acts of trademark infringement have caused and will continue to cause damage and irreparable harm to ProColor, and are likely to continue unabated, thereby causing further damage and irreparable harm to ProColor and to the valuable goodwill symbolized by and associated with its distinctive, well-known, and valuable PROCOLOR COLLISION® marks, unless enjoined and restrained by the Court.

89.   ProColor has no adequate remedy at law and has and will continue to suffer irreparable injury if Defendants are allowed to continue to wrongfully use the PROCOLOR COLLISION® marks and/or any confusingly similar variations thereof.

## FOURTH CLAIM FOR RELIEF

### False Designation of Origin/Unfair Competition (15 U.S.C. § 1125(a))

(Against All Defendants)

90.   Plaintiff realleges and incorporates each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth and restated herein.

91.   ProColor is the owner of all rights, title, and interest in, to, and under its distinctive PROCOLOR COLLISION® marks, as well as all goodwill therein.

92.   ProColor began using and acquiring rights in, to, and under, its valuable and well-known PROCOLOR COLLISION® marks long prior to Defendants' adoption and first use of Plaintiff's PROCOLOR COLLISION® marks and/or confusingly similar variations thereof, including, without limitation, the Pro Collision Center name and the confusingly similar or identical branding and marks.

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

93.     ProColor is the senior user of its PROCOLOR COLLISION® marks for automotive and collision repair and maintenance services throughout the United States.

94.     Defendants' unlicensed, unconsented to, and otherwise unauthorized use of the PROCOLOR COLLISION® and/or confusingly similar variations thereof, on or in connection with its advertising, marketing, promotion, offer, sale, and/or provision of its identical and highly related automotive and collision repair and maintenance services, constitutes a false designation of origin that wrongly suggests to the relevant purchasing public and consumers that such goods emanate from, or are licensed, endorsed, approved, or sponsored by, or are in some other way associated or connected with ProColor and/or its PROCOLOR COLLISION®.

95.     Defendants' unlicensed, unconsented to, and otherwise unauthorized use of the PROCOLOR COLLISION® marks and/or confusingly similar variations thereof, on or in connection with its actual or intended advertising, marketing, promotion, offer, sale, and/or provision of its identical and highly related automotive and collision repair and maintenance services, constitutes an unlawful and unfair business act or practice and/or unfair, deceptive, and false description or representation tending to suggest to the relevant purchasing public that ProColor is the source of origin of such services.

96.     CEC, Tony Buryakov, and Moses Buryakov authorized, supervised, directed, and personally and knowingly engaged in PCC's conduct as described above. Accordingly, Tony and Moses Buryakov are jointly and severally liable for such conduct, by virtue of which, Defendants have committed and are continuing to commit acts of federal trademark infringement in violation of, *inter alia*, Section 32 of the Lanham Act, 15 U.S.C. § 1114.

97.     CEC, Tony Buryakov, and Moses Buryakov are also vicariously liable for PCC's infringement. They have the right and ability to supervise and control PCC's acts and have a direct financial interest in PCC's infringement, including profits received from sales of PCC's infringing services.

98.    Defendants' aforesaid acts of trademark infringement have caused and will continue to cause damage and irreparable harm to ProColor, and are likely to continue unabated, thereby causing further damage and irreparable harm to ProColor and to the valuable goodwill symbolized by and associated with its distinctive, well-known, and valuable PROCOLOR COLLISION® marks, unless enjoined and restrained by the Court.

99.    ProColor has no adequate remedy at law and has and will continue to suffer irreparable injury if Defendants are allowed to continue to wrongfully use the PROCOLOR COLLISION® marks and/or any confusingly similar variations thereof.

## PRAYER FOR RELIEF

WHEREFORE, ProColor prays for relief as follows:

1.    Entering a temporary injunction enjoining Defendants, their officers, shareholders, agents, servants, employees, attorneys, successors and assigns, affiliates, suppliers, manufacturers, distributors, business partners, e-tailers, retailers, and those in privity with Defendants, and those persons in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise, from advertising, marketing, promoting, offering, selling, and/or providing automotive and collision repair and maintenance services using the PROCOLOR COLLISION® marks and/or any confusingly similar variations thereof, including, without limitation, the name Pro Collision Center and from violating the in-term non-compete agreement in the Franchise Agreements;

2.    Entering a permanent injunction enjoining Defendants, their officers, shareholders, agents, servants, employees, attorneys, successors and assigns, affiliates, suppliers, manufacturers, distributors, business partners, e-tailers, retailers, and those in privity with Defendants, and those persons in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise, from advertising, marketing, promoting, offering, selling, and/or providing automotive and collision repair and maintenance services using the PROCOLOR COLLISION®

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

1  marks and/or any confusingly similar variations thereof, including, without limitation,

2  the name Pro Collision Center and from violating the in-term non-compete agreement

3  in the Franchise Agreements;

4      3.    Directing Defendants to file with this Court and serve on ProColor's

5  counsel within 30 calendar days after service of an injunction, a report under oath

6  setting forth in detail the manner and form in which Defendants have complied with

7  the injunction;

8      4.    Directing that all point-of-sale materials, labels, signs, boxes, prints,

9  catalogues, line sheets, marketing materials, internet web pages, metatags, packages,

10  papers, and other advertisements in the possession or control of Defendants bearing

11  the PROCOLOR COLLISION® marks and/or any confusingly similar variations

12  thereof, including, without limitation, be delivered to ProColor's counsel or destroyed

13  in accordance with written instructions from ProColor;

14      5.    Ordering an accounting of Defendants' profits arising from Defendants'

15  trademark infringement;

16      6.    Ordering an award of Defendants' profits to Plaintiff, including disclosure

17  of the number of customers to whom Defendants sold and provided automotive and

18  collision repair and maintenance services using PROCOLOR COLLISION® and/or

19  any confusingly similar variations thereof, including, without limitation, and an

20  accounting of the gross revenue derived from such sales and provision;

21      7.    Ordering an award of damages sustained by ProColor;

22      8.    Ordering an award of treble the actual damages for use of a counterfeit

23  mark under 15 U.S.C. § 1117(b). ProColor reserves the right to elect, any time before

24  final judgment, statutory damages under 15 U.S.C. § 1117(c) in lieu of actual damages

25  and profits;

26      9.    Finding this is an exceptional case and ordering Defendants to pay

27  Plaintiff's attorneys fees incurred in connection with this action under 15 U.S.C. §

28  1117(a);

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614

10.     Ordering pre-judgment and post-judgment interest on the above damage awards;

11.     Ordering an award of costs to ProColor as the prevailing party; and

12.     Ordering such other and further relief that this Court may deem just.

DATED: February 25, 2026          Respectfully Submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ David Harford*
David Harford
Attorneys for Plaintiff
PROCOLOR COLLISION USA LLC

Bryan Cave Leighton Paisner LLP
1920 Main Street, Suite 1000
Irvine, California 92614